# 2007 DTA 71

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

FÉLIX SAN JOSÉ, MILAGROS MATOS BATISTA, LA SOCIEDAD-
LEGAL DE GANANCIALES ENTRE AMBOS COMPUESTA
Apelantes

v.

POPULAR AUTO, INC.; PUREZA REAL, INC.; ARTURO SOSA, CARMEN ZAYAS Y LA
SOCIEDAD LEGAL DE GANANCIALES ENTRE AMBOS COMPUESTA, *ET. ALS.*
Apelados

Núm. KLAN-2007-00282

San Juan, Puerto Rico, a 16 de mayo de 2007

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel, y la Juez Jiménez Velázquez

Colón Birriel, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El señor Félix San José, su esposa Milagros Matos Batista, y la Sociedad Legal de Bienes Gananciales por ellos compuesta (en conjunto, los "*apelantes*") solicitan la revocación de la **Sentencia** dictada el 17 de agosto de 2006, por el Tribunal de Primera Instancia, Sala de Bayamón, Hon. José Esteban Pérez Marrero, Juez, en el caso *Félix San José, Milagros Matos Batista y la Sociedad Legal de Gananciales compuesta por ambos v. Popular Leasing, Inc.; Pureza Real, Inc.; Arturo Sosa y otros*, Civil Núm. DDP2001-0600, sobre: daños y perjuicios; gestión indebida de cobro de dinero. Mediante el dictamen, archivado en autos copia de su notificación enmendada, el 6 de febrero de 2007, instancia: (1) desestimó la demanda presentada por los apelantes contra Popular Auto, Inc.; (2) declaró **Con Lugar** la reconvención presentada por Popular Auto, Inc.

contra los apelantes ordenándoles pagar solidariamente con Pureza Real, Inc. cuarenta y cinco mil quinientos cincuenta y ocho dólares con cuarenta y siete centavos ($45,558.47), costas, gastos del procedimiento, y el interés legal al ocho (8%) porciento anual desde la fecha de la presentación de la reconvención hasta el pago total de la deuda; (3) declaró **Con Lugar** la demanda instada por los apelantes contra Pureza Real, Inc. condenando a ésta, a devolverles toda suma que éstos tengan que pagar a Popular Auto, Inc., más quince mil ($15,000) dólares en daños y angustias mentales, las costas, gastos incurridos y cinco mil ($5,000) dólares de honorarios de abogado; y (4) desestimó la demanda instada por los apelantes, y la demanda de co-parte presentada por Popular Auto, Inc. contra el señor Arturo Sosa Mussenden, su esposa Carmen M. Zayas Matos y la Sociedad Legal de Bienes Gananciales compuesta por éstos.

En *Resolución* de 7 de marzo de 2007, concedimos término de treinta (30) días a Popular Auto, Inc. y otros para presentar su alegato.

De otra parte, el 27 de marzo de 2007, Arturo Sosa Mussenden, su esposa Carmen M. Zayas Matos y la Sociedad Legal de Bienes Gananciales por ellos compuesta (en lo sucesivo, los *"esposos Sosa Zayas"*) presentaron *Moción en Cumplimiento de Orden* alegando que la sentencia recurrida originalmente fue notificada el 31 de agosto de 2006, y la acción en su contra había sido desestimada, se trataba de un dictamen final y firme y debíamos desestimar el recurso. En atención a lo expresado por los esposos Sosa Zayas, el 12 de abril de 2007, emitimos *Resolución* informando que con anterioridad el caso estuvo ante nuestra consideración en el recurso KLAN-2006-01244, resuelto mediante **Sentencia** del 30 de enero de 2007, notificada, entre otros, al licenciado Jorge E. Ramos Mora, el 1 de febrero de 2007. Mediante el referido dictamen se desestimó, sin perjuicio, el recurso ante nuestra consideración por falta de notificación a una de las partes, ordenándose al Tribunal de Primera Instancia la notificación enmendada de la sentencia objeto del recurso. Por consiguiente, la notificación del 6 de febrero de 2007, reanudó las controversias teniendo las partes término para interponer sus recursos de revisión judicial, de entenderlo prudente.

Por su parte, el 12 de abril de 2007, Popular Auto, Inc. presentó su *Alegato*, solicitando la confirmación de la sentencia.

El 17 de abril de 2007, los apelantes presentaron *Moción en Torno Incumplimiento de Presentación de Alegato*, aduciendo que el término concedido a los esposos Sosa Zayas y a Popular Auto, Inc. había expirado. En igual fecha, los apelantes presentaron, además, *Moción en Oposición a Cumplimiento de Orden y Solicitud de Sanciones por Incumplimiento de Orden*.

Los esposos Sosa Zayas presentaron el 23 de abril de 2007, *Réplica a Moción en Oposición a una en Cumplimiento de Orden,* reafirmándose en que procedía la desestimación del recurso bajo el fundamento que los apelantes no controvirtieron la apreciación de la prueba realizada por instancia.

Finalmente, el 10 de mayo de 2007, los esposos Sosa Zayas presentaron escrito intitulado *Alegato de la Parte Apelada*, solicitando se confirmara la sentencia.

Resolvemos con el beneficio de la comparecencia de las partes, el derecho y la jurisprudencia aplicable, no sin antes exponer el trasfondo fáctico de lo acontecido.

## II

El coapelante Félix San José suscribió el 31 de julio de 1997, un contrato de arrendamiento financiero de un camión marca Freghtliner, modelo FL-70 del año 1997, número de serie 1FHU6HFAAOVH823375, con Popular Leasing and Rental, Inc., ahora Popular Auto, Inc., (en adelante, *"Popular Auto"*). Los cánones de arrendamiento bajo el referido contrato se estipularon en mil doscientos cuarenta ($1,240) dólares mensuales por un período de setenta y dos (72) meses.

Posteriormente, el 19 de julio de 2000, mediante Declaración Jurada, el señor San José pactó la cesión del contrato de arrendamiento financiero con Pureza Real, Inc. (en lo sucesivo, "*Pureza Real*"), representada en dicho acto por su secretaria, Carmen M. Zayas Matos. Declaró, en lo pertinente, que efectivo el 16 de junio de 1999, el señor San José cedió a Pureza Real cualquier interés y derecho sobre el vehículo de motor arrendado, asumiendo ésta toda responsabilidad civil y /o criminal que pudiera surgir, todo ello sin el consentimiento escrito de Popular Auto. Eventualmente, Pureza Real incumplió con el pago de los cánones mensuales de arrendamiento, razón por la cual, el 31 de agosto de 2000, el vehículo arrendado fue reposeído.

En atención a ello, los apelantes presentaron el 8 de mayo de 2001, una *Demanda* en daños y perjuicios, gestión indebida y cobro de dinero, contra Popular Auto, Pureza Real y los esposos Sosa Zayas. Alegaron, que Popular Auto fue culposo y/o negligente, en el manejo de los récords de pagos de la unidad arrendada, esperando catorce (14) meses para notificarle de los atrasos en los pagos, reposeyendo la unidad. En consideración a lo cual, su crédito fue afectado, causándole daños por la culpa y negligencia de Popular Auto.

Por su parte, allá en o para el 10 de agosto de 2001, Popular Auto contestó la demanda, negando y aceptando alegaciones; presentó varias defensas afirmativas y reconvino por incumplimiento de contrato contra los apelantes. En su reconvención, reclamó $45,558.47, por concepto del principal adeudado bajo el contrato de arrendamiento financiero, costas, gastos y honorarios estipulados.

Además, allá en o para el 3 de septiembre de 2002, Popular Auto presentó demanda de co-parte contra Pureza Real y los esposos Sosa Zayas, alegando que éstos asumieron la responsabilidad por el incumplimiento de todas las obligaciones pactadas por el señor San José en el contrato, por lo cual también respondían de los $45,558.47 adeudados. En la alternativa, alegó, que éstos se enriquecieron injustamente del uso y disfrute del vehículo arrendado, utilizándolo por un periodo de catorce (14) meses, sin haber satisfecho pago alguno. Reclamó $17,360 por cánones adeudados, a razón de $1,240 por el período de catorce (14) meses.

El 7 de noviembre de 2002, Popular Auto solicitó permiso para enmendar su demanda contra coparte, a los fines de incluir una nueva causa de acción en contra de Pureza Real. En unión a su solicitud, acompañó su demanda enmendada. El 22 de enero de 2003, los esposos Sosa Zayas contestaron la demanda enmendada y presentaron varias defensas afirmativas. Por su parte, el 24 de enero de 2003, instancia autorizó a Popular Auto enmendar su demanda contra coparte.

Durante el transcurso del litigio, en atención a una solicitud de anotación de rebeldía de Popular Auto, el 30 de junio de 2003, instancia le anotó la rebeldía a Pureza Real. Luego, el 24 de junio de 2004, dictó *Sentencia Parcial* en rebeldía contra Pureza Real, archivándose en los autos copia de su notificación el 13 de julio de 2004. Posteriormente, mediante *Notificación Enmendada de Sentencia*, la *Sentencia Parcial* del 24 de junio de 2004, fue notificada a Pureza Real el 22 de septiembre de 2004, a la dirección de récord, a saber, Valle Verde, DM 15 Calle Colinas, Bayamón, P.R. 00961. En su *Sentencia Parcial*, instancia concedió lo reclamado en la demanda de co-parte presentada por Popular Auto y condenó a Pureza Real al pago de cuarenta y cinco mil quinientos cincuenta y ocho dólares con cuarenta y siete centavos ($45,558.47) en concepto de los cánones de arrendamiento del vehículo de motor, más el interés por temeridad correspondiente, a partir de la presentación de la demanda de co-parte contra Pureza Real y las costas.

Posteriormente, el 4 de noviembre de 2004, Popular Auto solicitó ejecución de sentencia y embargo contra Pureza Real. En atención a ello, el 12 de enero de 2005, instancia ordenó la ejecución de la sentencia mediante embargo de cualquier bien propiedad de Pureza Real.

Así las cosas, el 12 de abril de 2005, notificada el 19 de ese mes y año, instancia emitió *Sentencia Parcial* decretando la paralización de los procedimientos en cuanto a Pureza Real, Pedro Zayas Zayas y Atilda Matos Torres, ordenando el archivo, sin perjuicio, en cuanto a dicha parte, hasta tanto su solicitud de quiebra ante el

Tribunal Federal de Quiebras para el Distrito de Puerto Rico fuera adjudicada. El 26 de junio de 2006, en atención a una solicitud para que se dejare sin efecto la orden de paralización, instancia procedió a dejarla sin efecto.

Luego de varios incidentes, como hemos informado, instancia dictó **Sentencia** el 17 de agosto de 2006, archivándose en autos copia de su notificación el 31 de agosto de 2006.

Insatisfechos con el dictamen, los apelantes presentaron ante este foro apelativo escrito de apelación, al cual le fue asignado el número KLAN-2006-01244. En *Sentencia* de 30 de enero de 2007, desestimamos el recurso por falta de jurisdicción, toda vez que el dictamen nunca le fue notificado a Pureza Real. Es decir, la notificación fue defectuosa al incumplir con la notificación a todas las partes conforme dispone la Regla 65.3 de Procedimiento Civil y la jurisprudencia. En consideración a lo cual, los términos para comparecer en revisión judicial no habían comenzado a decursar.

Devuelto el caso al foro de instancia, finalmente, el 6 de febrero de 2007, instancia renotificó el dictamen, reactivándose los términos para acudir en revisión judicial.

Inconformes con la determinación de instancia, el 5 de marzo de 2007, los apelantes presentaron su recurso de *Apelación*. Adujeron que incidió el tribunal: 1) al desestimar su demanda contra Popular Auto a pesar de que éste fue negligente al no realizar gestiones de cobro hasta pasados catorce (14) meses; 2) al desestimar su reclamación contra los esposos Sosa Zayas sin imposición de costas, gastos ni honorarios de abogado porque éstos son accionistas de Pureza Real y responden directamente por la negligencia de la corporación al no pagar una deuda contraída a través de ellos y se enriquecieron injustamente; 3) declarar con lugar la reconvención en el pleito de epígrafe cuando por sentencia se había determinado el pago de la reclamación, costas y honorarios de abogado por Pureza Real, lo que aplicaba el impedimento colateral por sentencia bajo la figura de cosa juzgada y le privaba al tribunal de adjudicar la misma controversia; y 4) declarar con lugar la reconvención al interés legal del ocho (8%) anual desde la fecha de su presentación hasta el pago total de la deuda.

### III

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. § 3371; *Amador v. Conc. Igl. Univ. de Jesucristo,* 150 D.P.R. 571, 581-582 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 L.P.R.A. § 3391; *Díaz Ayala, et al. v. E.L. A.,* 153 D.P.R. 675, 690-691 (2001). Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Artículo 1230 del Código Civil, 31 L.P.R.A. § 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, 31 L.P.R.A. § 3401; *Prods. Tommy Muñiz v. COPAN,* 113 D.P.R. 517, 521 (1982).

Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los términos de los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210, Código Civil, 31 L.P.R.A. § 3375; *S.L.G. Irizarry v. S.L.G. García,* 155 D.P.R. 713, 725 (2001).

Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. *Amador,* 150 D.P.R., a la pág. 581. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Artículo 1207 Código Civil, 31 L.P.R.A. § 3372; *S.L.G. Irizarry,* 155 D.P.R., a la pág. 724; *Trinidad García v. Chade,* 153 D.P.R. 280, 289 (2001); *Luán Invest. Corp. v. Rexach Const. Co.,* 152 D.P.R. 652, 659 (2000). Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al

27

tenor de los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. § 2994. De conformidad con el principio rector de *pacta sunt servanda*, las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público.

Nuestro Tribunal Supremo ha expresado que *"las obligaciones derivadas del contrato de arrendamiento son bilaterales, por lo que están sometidas al principio general de que ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. En otras palabras, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido (exceptio non adimpleti contractus)"*. *Mora Development v. Sandín*, 118 D.P.R. 733, 742 (1987).

## A. Contrato de Arrendamiento financiero o *"leasing"*

Por otro lado, el contrato del arrendamiento financiero o leasing es, en esencia, una nueva forma de financiamiento. *Meyers Bros. v. Gelco*, 114 D.P.R. 116, 119 (1983). El Artículo 3(b) de la Ley Núm. 76 de 13 de agosto de 1994, según enmendada, conocida como la *Ley de Arrendamiento de Bienes Muebles*, define el contrato de arrendamiento financiero como aquel acuerdo contractual entre el arrendador y el arrendatario en que se cede al arrendatario el derecho al uso y disfrute de un bien específico propiedad del arrendador, por un término específico a cambio de unos pagos periódicos y estipulados anteriormente. 10 L.P.R.A. § 2401.

Existen cuatro (4) tipos de arrendamiento de bienes muebles: (1) el arrendamiento financiero abierto; (2) el cerrado; (3) el operativo; y el (4) de consumo. En específico, el arrendamiento financiero abierto es aquél en el cual se establece un valor residual, del cual el arrendatario es responsable. Artículo 3 de la Ley de Arrendamiento de Bienes Muebles.

En el contrato de arrendamiento financiero la relación es una usualmente tripartita. El arrendador es un intermediario financiero entre el proveedor y el usuario. *Meyers Bros.*, 114 D.P.R., a la pág. 119.

**En este tipo de contrato, la entidad financiera es la propietaria del bien hasta el fin del arrendamiento**. El usuario goza generalmente de una triple opción al expirar el término irrevocable: comprar el bien por su valor residual, normalmente fijado en el contrato; realquilar el equipo bajo nuevas bases, a la luz de su valor residual; o devolver la propiedad a la entidad financiera. *Meyers Bros.*, 114 D.P.R., a la pág. 121. Véase el Artículo 19 de la Ley de Arrendamiento de Bienes Muebles, 10 L.P.R.A. § 2417.

Reiteradamente nuestro Tribunal Supremo ha señalado respecto a la institución del arrendamiento financiero o *"leasing"* lo siguiente:

*"[...]*

*[E]l contrato de leasing [...] posee elementos de otras figuras, pero se diferencia de ellas. No puede en verdad equipararse totalmente, como a veces se ha intentado, al arrendamiento puro, ni al arrendamiento- venta, ni al depósito, ni al préstamo, ni a la estipulación en favor de tercero, ni a otras figuras familiares afines, aunque a veces comparta características semejantes. Ninguno de estos vestidos provee la talla justa. La opinión más generalizada al presente, la cual suscribimos, es que se trata de un contrato atípico, sui géneris, producto de la realidad cambiante del tráfico mercantil."*

*Cláss v. Vehicle Eqmnt. Leasing Co.*, 143 D.P.R. 186, 197-198 (1997); *Meyers Bros.*, 114 D.P.R., a la pág. 121.

En el arrendamiento financiero o *"leasing"*, el pago inicial es mínimo; se pacta el uso del bien y no equivale a una transmisión definitiva de la propiedad al expirar el contrato, puesto que en el arrendamiento financiero se presenta una serie de alternativas. *Cláss*, 143 D.P.R., a la pág. 203. En el mismo no se puede presumir que el

arrendatario tuviera la voluntad de comprar al suscribir el contrato, debido a que esa voluntad suele formarse al concluir la operación de arriendo, en aquellos casos en que el arrendatario decide pagar el valor residual pactado en el contrato. *Id.* Además, en el contrato de arrendamiento financiero, la entrega del bien en caso de incumplimiento no compensa adecuadamente al arrendador su riesgo e inversión. *Id.*

Como mencionáramos, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes, por lo que se debe cumplir con lo expresamente pactado. Artículo 1044 del Código Civil, 31 L.P.R.A. § 2994. Por tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido, y no contiene vicio alguno. *De Jesús González v. A.C.*, 148 D. P.R. 255, 271 (1999); *Mercado, Quilinchini v. U.C.P.R.*, 143 D.P.R. 610, 627 (1997); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345, 351 (1984); *Olazábal v. U.S. Fidelity, etc.*, 103 D.P.R. 448, 462 (1975).

## B. El incumplimiento en los contratos de arrendamiento financiero

En cuanto al cumplimiento de los contratos, cuando en un contrato bilateral uno de los contratantes no cumple con lo que se obligó, el otro contratante tiene el derecho de exigir entre el cumplimiento o la resolución de las obligaciones con el resarcimiento de daños y abono de intereses en ambos casos. A tales efectos, el Artículo 1077 del Código Civil, 31 L.P.R.A. § 3052, dispone lo siguiente:

*"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere con lo que le incumbe.*

*El perjudicado podrá exigir entre el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible."*

**Ninguna parte puede exigir el cumplimiento de una obligación contraria sin antes cumplir o intentar cumplir su propia obligación.** *Martínez v. Colón Franco, Concepción*, 125 D.P.R. 15, 33 (1989). Para que se aplique el antes mencionado artículo, es menester que la obligación incumplida sea esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. Estas normas generales sobre la interpretación y el cumplimiento específico de los contratos son aplicables a las cláusulas del contrato de arrendamiento financiero de consumo objeto de este litigio.

Por otro lado, el Artículo 24 de la Ley de Arrendamiento de Bienes Muebles, 10 L.P.R.A. § 2422, respecto a la responsabilidad del arrendatario por incumplimiento en arrendamiento de consumo dispone lo siguiente:

*"§ 2422. Arrendamiento de consumo. Responsabilidad del arrendatario por incumplimiento*

*Si el arrendatario incumple con el arrendamiento de consumo, el arrendador podrá declarar vencido el contrato y recobrar del arrendatario las siguientes cantidades:*

*a. En casos de entrega voluntaria del bien arrendado:*

*(1) La totalidad de los cánones adeudados bajo contrato de arrendamiento menos las cargas financieras no devengadas al momento de la entrega, computadas mediante el método de reembolso conocido como la "Suma de los dígitos o Regla 78".*

*(2) Valor residual estipulado en el arrendamiento, si alguno.*

*(3) Los gastos razonables incurridos en la reparación del bien mueble a fin de ponerlos en condiciones para ofrecerlos a la venta o arrendamiento, o su valor en el mercado si éste es menor que el costo de reparación.*

*(4) Si el bien mueble es recuperado por acción judicial, además de las cláusulas (1), (2) y (3) de este inciso, será responsable por las cargas financieras hasta el momento de dictarse la sentencia y deben pagar los gastos y honorarios de abogados de acuerdo a lo estipulado en el contrato.*

*(b) El arrendador acreditará al arrendatario las siguientes sumas:*

*(1) El valor realizado del bien arrendado, si éste es vendido, neto de gastos y costos inherentes a la disposición del bien.*

*(2) El valor presente bajo el nuevo contrato si el bien arrendado es rearrendado por el arrendador.*

*(c) Si el arrendatario cumple en su totalidad y a satisfacción del arrendador con la cláusula (1), (2) y (3) del inciso (a) de esta sección más acepta pagar el 5% de la suma de la cláusulas (1), (2) y (3) en un plazo no mayor de 15 días luego de la entrega, dicho arrendatario podrá recobrar el bien mueble, en cuyo caso el arrendador vendrá obligado a traspasar la titularidad del bien al arrendatario."* (Énfasis suplido.)

En su primer señalamiento de error, los apelantes aducen que no tenían que cumplir con el pago de los cánones, toda vez que existía un contrato de cesión con Pureza Real y Popular Auto no realizó gestiones de cobro durante catorce (14) meses. Veamos en detalle tal contención.

De entrada, señalamos que nos parece descarnado el argumento de los apelantes. En un principio, el señor San José suscribió voluntariamente un contrato con Popular Auto para el arrendamiento financiero de un camión. Como parte del contrato, se comprometió a satisfacer un canon de $1,240 mensuales. Posteriormente, el señor San José decidió **unilateralmente** ceder la cuenta del camión a Pureza Real, sin el consentimiento del arrendador financiero y dueño registral del vehículo, es decir, Popular Auto. A partir de ese acontecimiento, el señor San José comenzó a incumplir con los acuerdos contenidos en el contrato de arrendamiento financiero perfeccionado con Popular Auto, por lo cual, éste podía, de conformidad con el acuerdo, reposeer la unidad y cobrar la diferencia en cualquier momento sin más trámites. Siendo el primer incumplidor el señor San José al ceder el camión a Pureza Real, sin conocimiento de Popular Auto, éste está impedido de exigir o levantar como defensa el *exceptio non adimpleti contractus,* pues nadie puede solicitar protección de los foros judiciales si ha procedido de mala fe e incumplido reiteradamente con lo acordado contractualmente. Popular Auto cumplió a la perfección con el acuerdo llegado con el señor San José y conforme al mismo reposeyó la unidad sin necesidad de otro trámite. A todas luces, fueron los apelantes quienes al ceder el vehículo en controversia y no constatar que se estaban realizando los pagos, entraron en incumplimiento de sus obligaciones para con el contrato de arrendamiento financiero otorgado con Popular Auto. *Martínez,* 125 D.P.R., a la pág. 33. Por lo cual, entendemos que el primer error no fue cometido.

De otra parte, como es conocido, las corporaciones son entes jurídicos independientes de las personas que las componen y gozan de personalidad jurídica propia.

Cónsono con lo anterior, el Artículo 27 del Código Civil de Puerto Rico, 31 L.P.R.A. § 101, dispone expresamente quiénes pueden ser las personas jurídicas ante la ley. Así son personas jurídicas: 1) las corporaciones y asociaciones de interés público reconocidas por la ley; 2) las corporaciones, compañías o asociaciones de interés particular, sean civiles, mercantiles o industriales, a las que la ley les conceda dicha capacidad.

En Puerto Rico, la disposición legal que rige en materia corporativa es la Ley General de Corporaciones de

1995, 14 L.P.R.A. § 2601 *et seq.* Al revisar dicho estatuto encontramos que: *"[t]oda corporación creada al amparo de las disposiciones de esta Ley tendrá facultad para: a) subsistir jurídicamente a perpetuidad con su nombre corporativo, a menos que su término de duración se limite en el certificado de incorporación; b) demandar y ser demandada bajo su nombre corporativo en cualquier tribunal [...]"*; Artículo 2.02, Ley General de Corporaciones de 1995. El legislador, de esa forma, le concedió personalidad jurídica propia a las corporaciones que se crean al amparo de la ley. Así lo ha confirmado nuestro Tribunal Supremo en innumerables ocasiones, como en el caso *D.A.C.O. v. Alturas de Florida*, 132 D.P.R. 905, 915 (1993), donde dicho foro resolvió que:

*"Al resolver interrogantes sobre la existencia de corporaciones privadas es menester recordar que las corporaciones privadas son personas jurídicas que existen por virtud de ley.... Es la Ley, por tanto, la que establece los fines para los cuales las corporaciones privadas han de existir y la capacidad civil de la que han de disfrutar durante su existencia. "*

La corporación brinda además protección adicional a sus accionistas, pues les permite separar su persona de la personalidad de la corporación. La razón de existir de una corporación, fundamentalmente es la creación de una personalidad jurídica propia e independiente de los miembros que la componen. Se trata del principio básico de la responsabilidad limitada, o sea que los accionistas, directores y oficiales de la corporación están separados de la corporación en cuanto a responsabilidad se refieren. En otras palabras, la corporación es una entidad con responsabilidad propia frente a sus acreedores. L.M. Negrón Portillo, *Derecho Corporativo Puertorriqueño*, 2da. ed., San Juan, 1996, a la pág. 13.

Por tal razón, la ley y la jurisprudencia protegen la personalidad jurídica de las corporaciones, pues ese es uno de los mayores atributos que la hacen atractiva como método de hacer negocios. Tiene que existir una razón superior para negarle dicha protección, a los accionistas, ya que dicha característica es consustancial a la ficción corporativa. *Fleming v. Toa Alta Develop Corp.*, 96 D.P.R. 240, 244 (1968); *South Puerto Rico Sugar Corp. v. Junta Azucarera*, 88 D.P.R. 43, 57 (1963).

Debido a que las corporaciones no son personas naturales capaces de comparecer por ellas mismas a procedimientos judiciales, la manera en que éstas pueden tener presencia en tales procedimientos judiciales o adjudicativos es a través de las personas naturales en quienes deleguen el deber y la obligación de representarlas. *Sabalier v. Iglesias*, 34 D.P.R. 352, 355 (1925). Cualquier persona a quien se le haya conferido autoridad real para ello tendrá el poder para representar o vincular a una corporación, sin consideración específica del título o posición específica que tenga dicha persona. C. Díaz Olivo, *Corporaciones*, Publicaciones Puertorriqueñas, Inc., 1999, a las págs. 95-97.

Como segundo señalamiento de error, adujeron los apelantes que incidió el tribunal al desestimar su reclamación contra los esposos Sosa Zayas sin imposición de costas, gastos ni honorarios de abogado, a pesar de que éstos son accionistas de Pureza Real y responden directamente por la negligencia de la corporación al no pagar una deuda contraída, enriqueciéndose injustamente. No les asiste la razón.

En el caso de autos, los apelantes suscribieron un contrato de cesión con la corporación Pureza Real representada en dicho acto jurídico por su secretaria y accionista la señora Carmen M. Zayas Matos. Bajo las circunstancias particulares de este caso, resulta ser indispensable que quien compareciera a la firma del acuerdo fuera una persona natural, es decir, la señora Zayas Matos. Regla 57.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 57.2. Ello, porque tratándose de una corporación que no es capaz de comparecer por ella misma a procedimientos legales, la manera en que ésta podía tener presencia en tales procesos es a través de las personas naturales en quienes delegue el deber y la obligación de representarla. Nótese, que se trata de una reclamación presentada contra un ente cuya personalidad jurídica es distinta y separada la de sus accionistas. La corporación Pureza Real fue objeto de una reclamación por lo que tiene derecho al igual que cualquier persona jurídica a

31

requerir la protección del ordenamiento legal. Contra los esposos Sosa Zayas, como correctamente determinara el foro sentenciador, los apelantes no han demostrado que la ficción corporativa de Pureza Real no les cobije o que exista una razonable controversia respecto a que la corporación es un *alter ego* de éstos.

Pureza Real, como corporación legalmente establecida, tiene legitimación activa para ser demandada, hasta tanto y en cuanto los apelantes no demuestren que su existencia es fraudulenta para que proceda descorrer el velo corporativo y reclamar directamente a sus accionistas, los esposos Sosa Zayas no tienen responsabilidad por los actos corporativos. Nótese, que en este caso la corporación Pureza Real fue quien compareció en el contrato de cesión con el señor San José y sus accionistas. Los esposos Sosa Zayas, personas distintas e independientes de Pureza Real, no responden directamente por la negligencia de la corporación al no pagar una deuda contraída. Por lo cual, el error no fue cometido.

En su tercer señalamiento de error, aducen los apelantes que incidió instancia al declarar con lugar la reconvención, cuando por sentencia se determinó que el pago de la reclamación, costas y honorarios de abogado lo haría Pureza Real, por lo que aplicaba la doctrina de impedimento colateral por sentencia bajo la figura de cosa juzgada y privaba al tribunal de adjudicar la misma controversia. Veamos.

La Asamblea Legislativa del Estado Libre Asociado ha establecido una política pública sobre las consecuencias jurídicas que tiene una sentencia dictada en un pleito, sobre cualquier litigio ulterior entre las mismas partes sobre la misma causa y la misma cosa. Sobre esto, el Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3343, establece lo siguiente:

*"Las presunciones establecidas por la ley pueden destruirse por la prueba en contrario, excepto en los casos en que aquélla expresamente lo prohíba.*

*Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.*

*Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.*

*En las cuestiones relativas al estado civil de las personas y en las de validez o nulidad de las disposiciones testamentarias, la presunción de cosa juzgada es eficaz contra terceros, aunque no hubiesen litigado.*

*Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.*

*El propósito de esta defensa es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto."*

La jurisprudencia ha establecido que para que prospere la defensa de cosa juzgada deben probarse los siguientes elementos:

*"1) [E]xiste una sentencia previa, válida, final y firme que adjudicó los hechos y resolvió la controversia en sus méritos;*

*2) las partes en el primer juicio y el segundo donde se plantea la defensa son las mismas. Se entiende que*

*existe identidad de partes siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o entre otras razones estén unidos a ellos por vínculos de solidaridad;*

*3) se trata del mismo objeto o cosa en ambos casos;*

*4) en el primer caso se pidió idéntico o análogo remedio (la misma causa de acción)." Pagán v. UPR,* 107 D.P.R. 721, 732-733 (1975).

Reiteradamente nuestro Tribunal Supremo ha resuelto que una sentencia dictada en un caso anterior constituye cosa juzgada en cuanto a todos los puntos que pudieron o debieron haber sido litigados y determinados aun cuando no fueron planteados. *Díaz Maldonado v. Lacot,* 123 D.P.R. 261, 274 (1989); *Díaz v. Navieras de Puerto Rico, Inc.,* 118 D.P.R. 297, 305 (1987).

La doctrina de cosa juzgada, de estirpe romana, impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas con propiedad en la acción anterior. *Rodríguez Rodríguez v. Colberg Comas,* 131 D.P.R. 212, 219 (1992); *Mercado Riera v. Mercado Riera,* 100 D.P.R. 940, 951-952 (1972). Tiene como fundamento tanto el interés del Estado en que se le ponga fin a los litigios como la deseabilidad de que no se someta a un ciudadano a las molestias que supone litigar la misma causa en dos ocasiones. *P.I.P. v. Comisión Estatal de Elecciones,* 120 D.P.R. 580, 604 (1988); *Pérez v. Bauzá,* 83 D.P.R. 220, 225 (1961).

Está claramente establecido que los vínculos de solidaridad requeridos para que exista la identidad de personas se manifiestan cuando el que litiga en el segundo pleito ejercita la misma acción e invoca los mismos títulos que en el primero. *Fatash v. Triple S, Inc.,* 147 D.P.R. 882, 889 (1999); *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 765 (1981); *Sucn. Zayas Berríos v. Berríos,* 90 D.P.R. 551, 565 (1964). Sobre el concepto de identidad de causa, nuestro más alto foro recogió la trayectoria jurisprudencial en la decisión emitida en el caso de *Mercado Riera,* 100 D.P.R., a la pág. 951, y concluyó que el factor determinante de la identidad de causa era si las dos acciones *"constituyen o no una misma causa de acción"*, no en el sentido de que el título de la reclamación sea el mismo, sino en el sentido de que el motivo de la demanda tenga el mismo origen.

En el caso de autos, no se dan los requisitos para la aplicación de la doctrina de cosa juzgada por impedimento colateral. Con relación a la *Sentencia Parcial* de 24 de junio de 2004, en la misma sólo se estableció la responsabilidad de Pureza Real frente a Popular Auto, mientras que la sentencia objeto de este recurso, dispuso sobre el resto de las controversias existentes entre los apelantes, Popular Auto y los esposos Sosa Zayas. Por ello, no están presentes los requisitos de identidad de partes, cosas y causas que exige la doctrina, toda vez que aunque las sentencias son consistentes, no resuelven la misma controversia. Nótese, específicamente que la *Sentencia Parcial* de 24 de junio de 2004, dispuso de la controversia en cuanto a la responsabilidad de Pureza Real frente a Popular Auto, al asumir el pago de los cánones de arrendamiento financiero, mientras que la sentencia recurrida resolvió el carácter solidario de la obligación de los apelantes y Pureza Real frente a Popular Auto. Entendemos que no incidió instancia en el tercer señalamiento de error.

De otra parte, como cuarto y último señalamiento de error, arguyen los apelantes que incidió instancia al imponer el pago de intereses legales desde la presentación de la reconvención. Veamos.

La Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3, establece que en toda sentencia que ordene el pago de dinero, debe incluirse intereses al tipo legal prevaleciente. Los intereses legales deben fijarse de acuerdo a lo que establezca el Reglamento de la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras al momento de dictarse la sentencia.

Específicamente, la citada disposición reglamentaria proscribe:

*"Regla 44.3. Interés legal.*

*(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y **que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha,** incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.*

*La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.*

*(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia."* 32 L.P.R.A. Ap. III, R. 44.3

Con respecto al inciso (b) de la Regla 44.3 se ha resuelto que:

*"La imposición de intereses en el presente caso es de naturaleza idéntica a la imposición de honorarios de abogado. Ambos proceden cuando la parte perdidosa ha sido temeraria y persiguen idénticos propósitos: disuadir la litigación y alentar las transacciones, mediante sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias producto de su temeridad sufrida por la otra parte."*

En relación con honorarios de abogado, la regla es al efecto de que cuando el tribunal sentenciador concluye que una parte ha sido temeraria, la condena de honorarios de abogado es imperativa.

Igual es la regla en cuanto a intereses. La propia Regla 44.4 (e) no da margen a una regla distinta; dice dicha Regla que el tribunal 'impondrá' dichos intereses a la parte que haya procedido con temeridad.

Tan imperativa es la condena de intereses desde que se presenta la demanda cuando la parte ha sido temeraria, como lo es la condena de intereses desde que se dicta sentencia cuando la parte no ha sido temeraria. Insurance Co. of P.R. v. Tribunal Superior, 100 D.P.R. 405, 411 (1972).

Los intereses legales sobre la sentencia forman parte integrante de ésta y pueden ser cobrados aunque el dictamen guarde total silencio al respecto. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 181 (1996); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 743 (1989); *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 469 (1982). Es imposición mandatoria contra todo litigante perdidoso cuando se ordena el pago de dinero, incluso contra el Estado y los municipios. *Morales González v. J.R.T.*, 121 D.P.R. 249, 266-267 (1988); *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833, 842 (1983); *Ins. Co. of P.R.*, 100 D.P.R., a la pág. 409. Tal imposición tiene como propósito evitar la dilación irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias a la brevedad posible. Regla 44.3(a) de Procedimiento Civil.

De igual forma y por disposición específica de la Regla 44.3(a), el deudor por sentencia deberá abonar al

*acreedor por sentencia igual tipo de interés anual sobre el balance insoluto del monto impuesto en calidad de honorarios y costas, estos últimos a partir de la aprobación del correspondiente memorando de costas en caso de que ello no se hubiere previamente acordado como crédito ejecutivo. Andrades v. Pizza Hut Mgt. Corp., 140 D.P.R. 950, 959 (1996), según aclarado en Andrades v. Pizza Hut Mgt. Corp. 141 D.P.R. 120, 121 (1996).*

*Tales partidas de intereses, como queda dicho, son de alto interés público debido al propósito disuasivo que persigue, por lo tanto, afectan al deudor por sentencia en **forma automática**. Si adicional a ello, el tribunal determina temeridad será de aplicación el inciso (b) de la Regla 44.3 y entonces su imposición será, en caso de daños y perjuicios, desde la presentación de la reclamación. Regla 44.3 (b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3 (b).*

*El concepto de temeridad al cual hace referencia el inciso (b) de la Regla 44.3, resulta ser la obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, que obligan a otra parte asumir y sufrir las molestias, gastos, trabajo e inconveniencias de un litigio innecesario." Ramallo Brothers v. Federal Express Corp.*, 129 D.P.R. 499, 517 (1991); *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 736 (1990); *Colondres Vélez*, 114 D.P.R., a la pág. 842.

En el orden reglamentario, los intereses sobre la suma principal de las partidas concedidas, se computan desde la fecha de la sentencia cuando no medie temeridad y desde que haya surgido la causa de acción en todo caso de cobro de dinero cuando se incurre en temeridad hasta su pago y finiquito. Ausente un dictamen de una determinación previa sobre temeridad, la computación de los intereses deberá ser desde que se dicte la sentencia hasta su pago final y no existe precedente legal para determinar, como hiciera instancia, que sería desde la presentación de la reconvención (10 de agosto de 2001). En el caso de marras, una vez instancia impuso a los apelantes el pago de $45,558.47, el cómputo del interés legal al amparo de la Regla 44.3(a) sobre el principal de la sentencia al tipo entonces en vigor acorde a la Ley Núm. 78 del 11 de julio de 1988 y el Reglamento, 7 L.P. R.A. § 2001-2020, sería al 9.0% anual hasta su pago total. Dicho interés era el vigente al 17 de agosto de 2006, fecha en que se dictó la sentencia recurrida. Finalmente, le asiste la razón a los apelantes en el sentido de que para el cómputo de los intereses post sentencia (Regla 44.3(a)) se utilizará como base el principal de las cuantías al momento de la sentencia y no al presentarse la reconvención como determinara erróneamente instancia. Con relación al argumento de Popular Auto respecto a que los apelantes fueron temerarios, el mismo no es correcto, ya que sobre quien único dicho foro hizo una expresión sobre conducta temeraria fue contra Pureza Real y ello en su *Sentencia Parcial* de 24 de junio de 2004 y no en el dictamen objeto del recurso. En consecuencia, entendemos que el cuarto error fue cometido por lo que procede que el interés legal impuesto sea modificado al 9% que era el vigente al momento de dictarse la sentencia (17 de agosto de 2006).

En mérito a lo expuesto, modificamos la **Sentencia** de 17 de agosto de 2006, del Tribunal de Primera Instancia, Sala de Bayamón, a los únicos fines de ordenar la imposición de intereses desde la fecha en que la misma fue dictada; así modificada, se confirma en cuanto a sus demás extremos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones